2 U.S. 45
 2 Dall. 45
 1 L.Ed. 282
 Inglis, for the use of Reede, et al.
v.
Inglis's Executors.
 Philadelphia Court of Common Pleas
 August Sittings, 1790
 2 U.S. 45
 2 Dall. 45
 1 L.Ed. 282
 
 1
 Inglis, for the use of Reede, et al.
 
 
 2
 v.
 
 
 3
 Inglis's Executors.
 
 Philadelphia Court of Common Pleas
 August Sittings, 1790
 
 4
 This was an action of debt, to recover a legacy of L 150, which Samuel Inglis had bequeathed to his brother George Inglis, the nominal Plaintiff, by his last will and testament, bearing date the 12th of August 1781. The defendants pleaded 1st. Payment; 2nd. Nil debent.
 
 
 5
 The circumstances of the case were these: The testator died in the beginning of Sept. 1783; and George Inglis, being in an embarrassed situation, obtained a friendly loan from Mr. Coxe, of 100 dollars, and assigned his legacy under his brother's will to that gentleman on the 5th of April 1784, in trust, that Mr. Coxe should reimburse himself, and pay over the balance to the legatee; who acknowledged, at the time of the transaction, that there was some difficulty in getting the money from the executors. Accordingly, when Mr. Coxe applied a few days afterwards to one of the executors, in behalf of George Inglis, some doubts were expressed to him, whether the legacy would be paid at all; as G. Inglis was considerably indebted to the estate of the testator, and other persons lately concerned with him in trade; but upon Mr. C xe's disclosing the nature of his bond, and of the assignment which he had taken to indemnify himself, the executor, in terms of great caution and expressly for the family honor, promised to pay as much as would satisfy Mr. Coxe's claim; which promise was punctually performed at the end of the year from the testator's death, allowed, either by the operation of the law, or prescribed according to the provisions of the will, for the payment of legacies. It appeared, likewise, that on the 26th of April 1784, G. Inglis, having bargained for the purchase of certain goods from Reede & Forde, in payment of the value amounting to L 112 4s. 6d. executed another assignment to them for the residue of the legacy in question; and, on the 4th of January 1788, Mr. Coxe, by an instrument, reciting the debt originally due to him, the legacy bequeathed to G. Inglis, the first mentioned assignment and the motives on which it was made, the receipt of L 37 10s. from the executors, and the residuary assignment last mentioned, transferred the unsatisfied interest in the legacy to Reede & Forde. Mr. Coxe had not however communicated to Reede & Forde the obstacles suggested by the executors, as to the assignment of the legacy, before the execution of the residuary assignment to them; nor, indeed, was there any evidence that they were apprised of that circumstance, 'till they applied to Mr. Coxe to institute the present suit, when he mentioned it to Forde.
 
 
 6
 But, in opposition to the claim of Reede & Forde, under their assignment, it was shown, that G. Inglis, was previously indebted to the house of Inglis & Long, in which the testator was concerned, and that he was also considerably indebted in partnership to the house of Willing & Morris, surviving partners of Samuel Inglis. Being, however, at the same time entitled by an article of agreement to a share in the commission, on the assignments of goods from Jamaica to Samuel Inglis & Co. he applied to them in September 1783, for the amount due to him out of that fund; but, at first they refused to pay it to him, in any other way, than by carrying it to the credit of his account; though, afterwards, (in December 1783) on a representation of his distresses, as well in conversation as in letters, they advanced him the money. In the letters which he wrote upon the occasion (dated the 20th of October and the 5th of November 1783) he mingled, with the language of misfortune and complaint, an overture of transferring his claim to the legacy in satisfaction of the debt, to Willing & Morris, as surviving partners of Samuel Inglis & Co; provided his share of the Jamaica commission was paid to him; saying in the first letter 'that he would chearfully assign the legacy;' and in the second letter 'that he would assign it;' but, neither before nor after the receipt of the commissions, entering into any formal instrument of assignment.
 
 
 7
 On these facts, the question to be tried was; whether Reede & Forde, or Willing & Morris, were entitled to the balance due on the legacy? And it was argued by Levy, for the former, and by Fisher for the latter. There being two pleas; one affirmative and the other negative, a preliminary discussion arose between the counsel, as to the right of beginning; which The President terminated by declaring it to have been long settled, that where there are two pleas, and the proof of one of them lies upon the plaintiff, he shall always open the cause.
 
 
 8
 In support of the claim of Reede & Forde, it was argued, that the goods had been sold to G. Inglis on the credit of the legacy, and not upon his personal credit; that the assignment was of a date prior to the delivery of the goods, so cautiously had they conducted themselves in order to avoid a contrary construction; and that the year observed for this payment did not elapse till sometime after the sale of the goods had been completed. It was remarked to have been the intention of the testator to afford a personal relief to his brother, and not to furnish a fund for the payment of his debts; from which it was oncluded, that the construction necessary to the opposite claim, being so contrary to that particular intention, ought at least to be strongly supported by the general reason and justice of the case.
 
 
 9
 But reason and justice co-operate with the testator's intention. There was no notice either to Coxe, or to Reede & Forde, of the alledged assignment, in favor of Willing & Morris; for, although it was intimated to Coxe, that there were claims subsisting against the legatee, he had no reason to expect, that an actual assignment of the legacy would ever be pretended. Notice is indeed essential to the validity and effect of an assignment; for, being an equitable transfer, it must be taken subject to every equitable circumstance. In the present case, however, there was no assignment in fact, or in law, but merely an offer to assign. It is true, that an incomplete conveyance will, in some instances, be carried into effect by a court of equity; but the court will never exercise such a jurisdiction, in aid of a creditor, who did not trust to the particular fund, against the claim of a creditor who did. In England, a judgment creditor does not trust to the lands: and, therefore, articles made for a valuable consideration, and the money paid, will in equity bind the estate, and prevail against any judgment creditor, mesne between the articles and the conveyance 1 P. Wms. 282. But there was not even a sufficient consideration for the pretended assignment to Willing & Morris. The commissions on the Jamaica assignments had amounted to 6 or L. 700, and the balance paid to G. Inglis on 1st December 1783 amounting to L. 276, was due to him in his own right; but the debt which he had contracted with Willing & Morris was a partnership debt; and to compel him to surrender his legacy, merely to obtain his own money, was an unconscionable act of coercion, void of any legal foundation. The credit originally given by Willing & Morris had no possible relation to the legacy; nor can it fairly be presumed that the subsequent payment was made on account of that fund; for, it is incredible that a balance of L. 276 should be advanced in consideration of a legacy amounting to no more than L. 150. The question, therefore, may reasonably and justly rest on this ground, that Willing & Morris, sensible of the hardship that would be done by retaining the commissions due to G. Inglis, and affected by the distresses of of the brother of their late partner, freely paid the money, without relying on any other agreements for the payment of their debt: while Reede & Forde, doubtful of the resources of G. Inglis, sold their goods to him on the credit of the legacy alone; and under these circumstances the claim of the latter must in law and equity be preferred.
 
 
 10
 For Willing & Morris, who were the real defendants, it was contended, that the offer to assign the legacy, and the payment of the commissions in consequence of it (from which latter circumstance an acceptance of the offer was inferred) amounted to a compleat contract. The reimbursement of Mr. Coxe was clearly no evasion of that contract; but merely an acknowledgment of family obligation, accompanied also with a declaration that nothing more should be paid on account of the legacy. Wherever possession goes according to an agreement, the bargain shall be considered to be executed, although no papers have passed between the parties. 1 Vern. 363. and indeed the general rule is, that whatever, for a valuable consideration, is covenanted to be done, shall, in equity, be looked upon as done. 3. P. Wms. 215. 1. P. Wms. 277. But Willing & Morris, besides the conclusion from these authorities, as the surviving partners of S. Inglis, might reasonably presume, that no formal assignment was necessary, since the personal estate of the testator was involved in the joint stock of the company; and when they paid the commissions, they acquired, ipso facto, a right to retain the legacy that had been offered as an inducement for that payment.
 
 
 11
 Nor is there a want of that notice, which will satisfy the law upon this occasion. Mr. Coxe, the first assignee, was apprised in the very origin of the transaction, that there would be some difficulty in obtaining the legacy; and the executor, to whom he applied, declared, that no more than the amount of Mr. Coxe's debt would be paid. If notice, therefore, was necessary, it is decided, that notice to a first purchaser is binding upon all who follow him. 2 Atk. 242.
 
 
 12
 But, it is certain, that whoever gets the verdict, an innocent person will suffer. The only question, therefore, is, whose right is the best? Where the parties are equal in equity, the priority of right furnishes a fair rule for decision; and the claim of Willing & Morris is not only founded on a greater value in point of confidence, but on a superior title in point of date. The executors had early notice of it; they were justifiable in retaining the legacy to pay it; and the action now trying is sufficient evidence of their refusal (after being warned for that purpose) to recognize the adverse assignment.
 
 
 13
 The President, having recapitulated the evidence as stated in the commencement of this report, proceeded in delivering the following charge to the jury.
 
 Shippen, President
 
 14
 The action brought to recover the legacy in question, turns, in reality, upon a dispute between Reede & Forde (who have a right to use the legatee's name on the occasion) upon the one hand, and Willing & Morris, upon the other. The assignees of the nominal plaintiff have produced a regular transfer of the lggacy, and are unquestionably entitled to a favourable verdict, unless their claim is satisfactorily repelled by any circumstance of law or equity, arising from the defence which has been made.
 
 
 15
 It is objected to their claim, then, that Willing & Morris are entitled to the legacy, by virtue of a prior assignment; and although this assignment is not so regularly proved as the other; yet, the defendant's counsel has argued, that it is equally effectual in point of equity. The facts respecting the alledged assignment to Willing & Morris are briefly, that G. Inglis, being entitled to a sum of money for his share in the commissions, arising from the sale of goods consigned to S. Inglis & Co. applied for payment to Willing & Morris, the surviving partners; that they refused, at first, to make the payment, insisting that they would retain the amount in satisfaction of a debt due to them from G. Inglis; but that eventually they complied, being strongly solicited by G. Inglis, who in his letters offered to serve them in any way, and particularly to make over his legacy. Now, it is contended, that this compliance must be taken to have been on the terms of the request; and that the terms amount, at least, to a promise of an assignment. The case upon the facts disclosed is not, indeed, free from doubt, but if the jury shall, upon the whole, be of opinion, that the parties, in paying and receiving the commissions, contemplated and intended a transfer of the legacy as a consideration, then the law stated by the defendants being well founded, the promise to assign created an equitable right, and, without any further formality, vested the legacy in Willing & Morris. For, by making and accepting an offer, every bargain is consummated.
 
 
 16
 Much has been said on the point of notice; and, it is true, that if the obligee of a bond assigns it, notice ought to be given to the obligor, in order to prevent his paying the money to the person, who has thus parted with his interest. But there is no positive law that requires a first assignee to notify a subsequent one; and the case is not within the general principle of the rule that has been cited.
 
 
 17
 The sole object of consideration, therefore, is, whether the money arising from the commissions, was advanced by Willing & Morris to G. Inglis, on the faith of his promise, and the credit of the legacy? That fact it is the province of the jury to ascertain and decide: If the affirmative prevails in their minds, the verdict ought to be for the defendants; but if they entertain a contrary opinion, the nominal plaintiffs are entitled to recover.
 
 Verdict for the Plaintiff.*
 
 
 *
 There was a motion made for a new trial; but on the 26th of August 1790 it was withdrawn, and judgment entered conformably to the verdict.