ROBERT M. WITHERS, PLAINTIFF IN ERROR, *v.* WILLIAM B. GREENE, ADMINISTRATOR OF RICHARD MAY, DECEASED.

The laws of Alabama place sealed instruments, commonly called single bills, upon the footing of promissory notes, by allowing the defendant to impeach or go into their consideration; and also permit their assignment, so that the assignee can sue in his own name. But in such suit, the defendant shall be allowed the benefit of all payments, discounts, and set-offs, made, had, or possessed against the same, previous to notice of the assignment.

The construction of this latter clause is, that where an assignee sues, the defendant is not limited to showing payments or set-offs made before notice of the assignment, but may also prove a total or partial failure of the consideration for which the writing was executed.

Proof of a partial failure of the consideration may be given in evidence in mitigation of damages.

The English and American cases upon this point examined, showing a relaxation of the old rule, and allowing a defendant to obtain justice in this way, instead of driving him to a cross action for damages.

Thus, where the obligor of a single bill was sued by an assignee, and pleaded that the bill was given for the purchase of horses which were not as sound nor of as high a pedigree as had been represented by the seller, such a plea was admissible.

It is not a sufficient objection to the plea, that it omits a disclaimer of the contract, and a proffer to return the property. If the defendant looked only to a mitigation of damages, he was not bound to do either, and therefore was not bound to make such an averment in his plea.

Nor is it a sufficient objection to the plea, that it avers that the obligation was obtained from him by fraudulent representations, or that it concludes with a general prayer for judgment. Pleas in bar are not to receive a narrow and merely technical construction, but are to be construed according to their entire subject-matter.

In this respect there is a difference between pleas in bar and pleas in abatement.

THIS cause was brought up, by writ of error, from the Circuit Court of the United States for the Southern District of Alabama.

It was an action of debt brought in the District Court of the United States for the Middle District of Alabama, by May, assignee, on a single bill, under seal, for the payment of three thousand dollars, executed by R. W. Withers to A. B. Newsom, a citizen of Tennessee, and by him assigned to the plaintiff. Pending the suit May died, and Greene qualified and revived in his name as administrator.

After some pleas which were withdrawn, the defendant filed the following :—

"And for a further plea in this behalf, said defendant, by leave, &c., says, *onerari non*, because he says that heretofore, to wit, on the     day of     , in the year 1839, said defendant, at the instance and request of one A. B. Newsom, the payee of the sealed note or writing obligatory in the plaintiff's declaration mentioned, purchased of the said Newsom two certain fillies, that is to say, one dark brown filly, said to have been foaled in the spring of the year 1835, and one sorrel filly, said to have been foaled the 22d day of June, in the year 1837, at and for a large sum of money, to wit, the sum of four thousand dollars, to be paid by the said defendant to the said Newsom ; for the payment of which said sum, in part, defendant gave to the said Newsom the said sealed note or writing obligatory, in the said plaintiff's declaration described, and said defendant avers that said sealed note was given for and upon no other consideration whatsoever. And said defendant further avers, that the said Newsom falsely and fraudulently represented to said defendant, that the said fillies were raised by himself, and that the said fillies were sound, and that the said fillies had

certain pedigrees, that is to say, — (the pedigrees are set forth in the plea, but they are here omitted,) — all which said representations as to the soundness of the said fillies, as to the fact that they were raised by the said Newsom, and as to their pedigrees, were false and untrue, and known to be false and untrue by the said Newsom, and were so made, as     resaid, by the said Newsom to deceive and defraud the said defendant.

" And said defendant further says, that he, relying upon the said false and fraudulent. representations of the said Newsom, and believing the same to be true, made the said purchase of the said fillies.   And said defendant further says, that said fillies were purchased by him as aforesaid for their blood, and for the turf, and that otherwise they were wholly worthless to the said defendant.   And said defendant further says, that the said Newsom was before, and at, and hath been ever since, and still is, a citizen of the State of Tennessee, residing three hundred miles or more from the residence of said defendant, who then resided, and still resides, in the County of Greene, in this State ; and that said Newsom brought the said fillies from Tennessee to the residence of said defendant, in Greene County, and then sold them to said defendant as aforesaid.

" And said defendant further saith, that he did not discover the extent of the unsoundness of the said fillies until a long time after said purchase, to wit, the fall after the said purchase, when they were being trained for the turf, and that he did not learn that the pedigrees were false until a long time after said purchase, to wit, some time in the fall of 1839, or winter of the year 1839 – 40.

" And said defendant further saith, from the time he discovered the permanent unsoundness of the said fillies as aforesaid, and the falsity of the said pedigrees as aforesaid, he was ready, willing, and desirous. to, and would have returned and delivered the said fillies to the said Newsom, if he had had an opportunity so to do, which he did not ; and that from the discovery of the fraud of the said Newsom as aforesaid, up to the death of the said fillies, which happened during the winter and spring of the year 1840, he was willing and ready to deliver and return the said fillies to the said Newsom, as aforesaid.

" And said defendant further saith, that said fillies died, as aforesaid, without the fault or neglect of the said defendant or his servants ; all which several matters said defendant is ready to verify.   And said defendant saith, that the said sealed note or writing obligatory was obtained from him by the said Newsom by the false and fraudulent representations as aforesaid, and is therefore, fraudulent and void in law ; wherefore said

defendant prays judgment, whether he ought to be charged with the said debt," &c.

To this plea the plaintiff demurred, and, in May, 1843, the court sustained the demurrer, and gave judgment for the plaintiff in the sum of three thousand dollars debt, and eight hundred and eighteen dollars damages, together with costs.

The defendant sued out a writ of error, and brought the case up to this court.

It was argued by *Mr. John Y. Mason,* for the plaintiff in error, and *Mr. Bayly,* for the defendant in error.

*Mr. Mason,* for the plaintiff in error.

The facts being well pleaded, and admitted to be true, it will be insisted for the plaintiff in error, that the demurrer should not have been sustained.

The facts constituting the gist of the defence may be thus stated : —

1. The consideration of the contract on the part of Withers was four thousand dollars, of which one thousand was paid, and the single bill was given for three thousand dollars.

2. That the payee procured the contract by representations false and fraudulent, with a knowledge that they were false, and with the purpose to defraud.

3. That, the facts being falsely stated, the fillies were wholly worthless to the defendant.

4. That the fraud was not discovered until long after the sale, and no opportunity offered to return them until they were dead ; and that the fillies died without fault or neglect on the part of the defendant ; and on these facts the question is, Can the plaintiff enforce the contract, as to that part of the purchase money which is unpaid ?

The contract was made in Alabama, and the *lex loci* governs.

The plea proceeds on the ground, that, as to the defendant, there was a total failure of consideration, but that, if the contract were not to be regarded as *nudum pactum,* there was a failure of consideration to the full amount sued for and unpaid.

The statute, to avoid circuity of action, and to promote justice, authorized a defence at law, which without it could have only been made in equity.

1. The conduct of the vendor amounted to *dolum malum ad circumveniendum,* which, being proved or admitted, vitiates all contracts, both at law and in equity.   Story on Contracts, § 165 ; Ferguson *v.* Carrington, 9 Barn. & Cres. 59 ; Fermor's case, 3 Coke's R. 77.

To deprive the defendant of the benefit of this defence, it must clearly appear that the vendee acquiesced in the contract after he discovered the fraud.   The fact of such acquiescence must be determined on the circumstances of each case.

The offer to return the article purchased would show that there is no acquiescence; but the party must have reasonable time to do this act of repudiation, thereby rescinding the contract in whole.   In this case it will be insisted that the fillies could not be returned or tendered after they died, and that the excuse is sufficient for not doing so before that event, and after the fraud was detected.

2. It is stated by Kent, that, " in cases where the consideration has totally failed, the English courts have admitted that fact to constitute a good defence between the original parties to a bill of exchange, though a partial failure is no defence." 2 Kent's Com. 473 ; Morgan *v.* Richardson, 1 Camp. N. P. 40, note ; Mann *v.* Lent, 10 Barn. & Cress. 877.   " But with us a partial as well as total failure of consideration may be given in evidence by the maker of a note to defeat or mitigate a recovery, as the case may be."   2 Kent's Com. 473 ; Hills *v.* Bannister, 8 Cowen, 31 ; Sill *v.* Rood, 15 Johns. 230 ; 13 Wendell, 605 ; Cook *v.* Mix, 11 Conn. 432.

With regard to the quality of goods sold, the seller is bound to answer where he has made fraudulent representations concerning them, which amounts to a warranty in law.   Seixas *v.* Wood, 2 Caines's R. 48.   In the English cases, where the right to defend or to recover back money paid under contracts has been denied, it is conceded that the vendee may sue on the warranty or for the deceit.   The leading case of Hunt *v.* Silk, 5 East, 449.

In Alabama the rule has been established, under their statute, that, where " fraud enters into the transaction, it is competent for the defendant, on proof of it, to show a defect in the consideration in diminution of damages."   And that, " wherever a defendant can maintain a cross action for damages, on account of a defect in personal property purchased by him, or for a non-compliance by the plaintiff with his part of the contract, the former may, in defence to an action upon his note, made in consequence of such purchase or contract, claim a deduction corresponding with the injury sustained."   Peden *v.* Moore, 1 Stewart & Porter, 71 ; 3 Stewart, 98.

In the case of Peden *v.* Moore, the court below refused to instruct the jury, that, if they believed that the consideration of the note had failed to the full amount, except what had been paid, they should give a verdict for the defendant ; and ruled

that, unless a total failure of consideration was proved, they should find for the plaintiff. The decision was reversed, and the rule established, that a partial failure of consideration was admissible in defence. See, also, Barrett *v.* Stanton and Pollard, 2 Alabama, 181. The case of Peden and Moore, it is submitted, must rule this.

The defendant Withers, in an action against Newsom, on proof of the facts stated, would be entitled to recover damages for the fraud practised. Such a suit may be maintained without any offer to return the goods sold. Fielder *v.* Starkin, 1 H. Bl. 17; Patteshall *v.* Tranter, 3 Adolph. & Ellis, 106; Caswell *v.* Coare, 1 Taunt. 566; 2 Kent's Com. 480, note.

In an action by payee against the maker of a note, it is competent for the maker, in reduction of damages, to prove that the sale was effected by means of false representations on the part of the payee, although the chattel has not been returned or tendered to him. Harrington *v.* Stratton, 22 Pick. 510; Parish *v.* Stone, 14 Pick. 198; McAllister *v.* Reab, 4 Wendell, 483; Spalding *v.* Vandercock, 2 Wendell, 431; Burton *v.* Stewart, 3 Wendell, 236; Miller *v.* Smith, 1 Mason, 437.

It is stated by Chief Justice Mansfield, in 1 Taunton, that the rule which allows fraud or breach of warranty to be given, in evidence in mitigation of damages, arises from the desire to avoid circuity of action. Under the statute of Alabama, and the rule established in Peden *v.* Moore, the defence in this case is admissible *a fortiori.* In Mississippi, where there is a similar statute, the same rule prevails. Harman *v.* Sanderson, 6 Smedes & Marsh. 41, 42.

The modern English cases have greatly relaxed the ancient rule on the subject of rescission of contracts for sales of personal property. Poulton *v.* Lattimore, 9 Barn. & Cress. 269; Steward *v.* Coesvelt, 1 Carr. & Payne, 23; Percival *v.* Blake, 2 Carr. & Payne, 514; Chitty on Contracts, 463, 743, ed. 1848.

In the case of Parish *v.* Stone, 14 Pick. 198, and Harrington *v.* Stratton, 22 Pick. 516, and in Peden *v.* Moore, the English cases are reviewed, and I submit that it is clearly shown that the technical reasons on which the decisions were founded cannot be justified, and do not apply, where the authority to make the defence is given, as here, by the statute. If it shall be held that the worthlessness of the fillies sold to the defendant does not constitute a total failure of consideration, because they were, or might have been, of value, for the plough or otherwise, to the vendor, and it shall also be held that the excuse offered by the vendee for his failure to return is insufficient, he is still entitled to an abatement. Beecker and

Beecker v. Vrooman, 13 Johns. 302, 303, and cases cited; Lewis v. Cosgrave, 2 Taunt. 2, 3. In this case the court held, that, "as it was clearly a fraud, and a man cannot recover the price of goods sold under a fraud, a new trial should be granted." Any defence which in England may be made in assumpsit for the price of the goods sold may be made in Alabama, under her statute, in a suit on a sealed bill, for the purchase-money.

The utmost effect, therefore, which can be given to the failure to offer to return is, that the defendant cannot rescind the contract *in toto*, avoid the payment of the note in suit, and recover back the money paid, if the property be of any value. But he is entitled to such abatement in mitigation of damages, if sued in assumpsit, or by virtue of his special plea, if sued in debt, as the price exceeded the fair value of the goods sold.

And this conclusion entirely conforms to the principle on which the duty to return is founded, to put the parties, as near as may be, *in statu quo*. It avoids circuity of action, and gives to the plaintiff a fair value for his property, fraudulently sold at a price extravagantly beyond it. The sum already paid would, without doubt, have been decided by the jury, if submitted to them, to be rather more than a fair price for the property sold, on the facts admitted in this case.

*Mr. Bayly*, for the defendant in error, contended that the defendant ought to have returned or offered to return the property, and that this should have been done immediately upon the discovery of the fraud. 12 Wheaton, 183; 2 Kent's Com. 480; 1 Campbell, 190; 4 Mass. 402; 15 ib. 319. He who would rescind a contract must put the other party in as good a situation as he was before; otherwise he cannot do it. Chitty on Contr. 276; Hunt v. Silk, 5 East, 449; Conner v. Henderson, 15 Mass. 314.

Many other authorities might be added to the same effect, but, on a subject on which the cases are so numerous and so entirely uniform, it will be sufficient to give a reference to a few of them, without citing them at large. See Pulsifer v. Hotchkiss, 12 Conn. 234; Masson v. Bovet, 1 Denio, 69; Coolidge v. Brigham, 1 Metcalf, 547; People v. Niagara C. P., 12 Wendell, 246; Barnett v. Stanton, 2 Alabama, 181, 195; Minor v. Kelly, 5 Monroe, 272.

Moreover, this ought not to have been a plea in bar of the whole action. The question what the fillies were worth was one for the jury to decide. In the cases cited by the opposite counsel, the plea went merely to the diminution of damages, instead of being in bar of the whole claim.

Mr. Justice DANIEL delivered the opinion of the court.

This cause, from the District Court of the United States for the Middle District of Alabama, is brought here under the act of Congress of 8th August, 1846, ch. 104.

The plaintiff in error was sued in the court below, upon a single bill for the sum of $ 3,000, executed by him on the 16th of February, 1839, payable on the 1st of January ensuing, to A. B. Newsom or order, and which was assigned by Newsom to May, the testator of the defendant.

What were the grounds of defence first assumed by the defendant does not appear, and it is immaterial now to inquire. The pleas first filed were by consent of parties withdrawn, and by leave of court the defendant filed a special plea, averring that the note sued on was given by him for a part of the price of two fillies purchased by him of Newsom for $ 4,000; that Newsom falsely and fraudulently represented to the defendant that these fillies were reared by himself; that they were sound and of a high pedigree (as is set forth in the plea); that the defendant, desiring to possess these fillies for their blood and for the turf, and induced and deceived by the false representations of Newsom, paid him the sum of $ 1,000 in cash, and executed the note in question for the residue of the purchase-money; that the representations of Newsom as to the fillies having been reared by him, of their soundness, and of their pedigree, were all untrue, and all known to be untrue by Newsom at the time of the sale; that the defendant did not ascertain either the extent of the unsoundness of these fillies, or the falsehood of the pretended pedigree, until during the autumn and winter of the year 1839; that the said Newsom at the time of the sale resided, and has continued to reside, in a different State, and more than three hundred miles from the defendant; that from the time of discovery by the defendant of the unsoundness of the fillies, and of the falsehood of their pedigree, up to the time of their death, which happened without any fault of the defendant or his servants, in the spring of 1840, he, the defendant, was willing and ready, and desirous, of returning the fillies to the said Newsom, but never had an opportunity of so doing. The plea concludes with stating, that the note or writing obligatory was obtained from him by Newsom by his false and fraudulent representations, and is therefore void; and with a prayer whether defendant should be charged with the debt. To this plea there was a demurrer by the plaintiff below, and the judgment of the court below sustaining the demurrer, brought hither by writ of error, this court is called on to examine.

Although the legal principles and inquiries involved in this cause are to a great extent local in their character and operation, it will be found to embrace rules, both with respect to pleading and to the interpretation of contracts, extending in some respects beyond the influence of merely local jurisprudence. The contract in question having been made within the State of Alabama, and designed to be performed within that State, the *lex loci contractus* must justly be understood as entering into and controlling the effect of its stipulations, and having been sued upon within the same State, the *lex fori* must, in a great degree, regulate the mode of its enforcement.

By a statute of Alabama (see Aikin's Digest, p. 283, § 138), it is enacted, "that, whensoever any suit is depending in any of the courts founded on any writing under the seal of the person to be charged therewith, it shall be lawful for the defendant or defendants therein, by a special plea, to impeach or g, into the consideration of such bond, in the same manner as if the said writing had not been sealed." By another statutory provision of the same State it is declared (see Aikin's Digest, p. 328, § 6), "that all bonds, obligations, bills single, promissory notes, and other writings, for the payment of money or any other thing, may be assigned by indorsement, whether the same be made payable to the order or assigns of the obligee or payee or not; and the assignee may sue in his own name, and maintain any action which the obligee or payee might have maintained thereon previous to assignment, and in all actions to be commenced and sued upon any such assigned bond, obligation, bill single, promissory note, or other writing aforesaid, the defendant shall be allowed the benefit of all payments, discounts, and set-offs, made, had, or possessed against the same, previous to notice of the assignment, in the same manner as if the same had been sued and prosecuted by the obligee or payee therein." By the enactment herein first cited, it is obvious that specialties are divested of any force or solemnity at any time ascribed to them by reason of their having a seal annexed, and are placed, with respect to all inquiries which may be instituted into the validity of their consideration, precisely upon the footing of parol agreements. With respect to the construction of the second provision (§ 6) of the statute above cited, the question has been suggested, whether the right conferred by the first enactment, to inquire into the consideration of contracts in contests between the original parties, is extended, by the correct meaning of the statute, to the defence allowed to obligors at the suit of assignees, or whether obligors in assigned bonds, notes, &c., are not restricted in their defence to transac-

19 *

tions posterior in date to the writing itself, and forming no necessary part of the original consideration, the language of the statute, as already quoted, being this : — "shall be allowed the benefit of all payments, discounts, and set-offs, made, had, or possessed against the same" (i. e. against the bonds) "previous to notice of assignment, in the same manner as if the same had been sued and prosecuted by the obligee therein."

In construing these provisions of the Alabama statute as being *in pari materia*, we cannot regard them as changing the rights of the parties arising out of the contract itself, nor as conferring new rights on others not inherent in such original obligations, but we regard them rather as securing those rights, except so far as they may have been legally and justly transferred. There could be no doubt of the right to impeach the consideration, or the right to claim the benefit of payments, set-offs, or discounts, on the part of the obligor as against his obligee. The statute was not designed to take from the obligor any of these rights, but merely to deny to him the claim to discharge his obligation by payments, &c., to the original obligee, after he knew the obligation to have been transferred to another. Neither did the statute create in the assignee any new right varying the character of the contract itself. It conferred on him merely the rights to take by assignment, and to sue in his own name, — in effect, the power to acquire in the mode prescribed an equitable title, and to prosecute that title in a court of law. Contracts at common law, to which this simple power of assignment is extended by statute, differ essentially from those which arise out of and are governed by the law merchant, or from such as are placed on the footing of the law merchant by express legislative enactment. We conclude, then, that, in a case like the present, the obligor would have the right to impeach the consideration for which the writing was given, or to show its discharge by payments or set-offs made or existing at any time before notice of assignment, or by discounts to prove either a total or partial failure of the consideration for which the writing was executed, accordingly as the truth of the case would warrant either defence. This interpretation of the law we consider as accordant, not only with the language and the rational meaning of the statute, but as sustained by the decisions of the courts in the State whose peculiar policy we are discussing, and by decisions in other States upon statutes containing provisions similar to those in the statute of Alabama. Recurring to the latter statute itself, its terms declare that whensoever, that is, in every case, in which suits shall be instituted founded on any writing under seal, the per-

son to be charged therewith, comprehending every and-any person, whether he sustains a relation to an assignee or to any other person, may impeach the consideration of the bond or other writing (Aikin's Dig., p. 233, § 138), and then proceed with respect to the rights and powers of the assignee to provide, that he may sue in his own name, and may maintain any action which the obligee or payee might have maintained thereon, previous to assignment (Aikin's Dig., p. 328, § '6); he has the same rights and remedies which pertained to the obligee or payee, and none other.

And first, with respect to the defence as against the assignee, founded on the total failure of consideration, it has been ruled under the statute of Alabama, in the case of Clements v. Loggins, 2 Alabama, 514, that, when the payee of a note is inquired of by one wishing to purchase it, whether he has any defence against it, and answers that he has none, he does not thereby preclude himself from making any defence against the note growing out of the original transaction, of which he had no knowledge at the time. And it will be found that the example put by the court in this case (see p. 519) is one of total failure of consideration. Yet this defence could never be permitted if it is to be sought for within a narrow interpretation of the words *payments, set-offs,* and *discounts,* — such a one as would not embrace the true character of the transaction. Again, in the case of Wilson v. Jordan, in 3 Stewart & Porter, it is said by the court, on p. 98, — "The decisions of this court have gone far to abolish the distinction with us between the effect of a partial and total failure of consideration"; and again, the court uses this language : — "Nor do we feel the least dissatisfaction with our former decisions, so far as they tend to place partial and total failure of consideration on the same footing, instead of driving the parties to circuity of action." The doctrines ruled by the Supreme Court of Alabama are closely coincident with those of the courts of other States, in the construction of statutes similar to that of the former State. Thus, in the cine of Clements v. Loggins, 2 Alabama Reports, 514, as late as 1801, the court, by way of illustration, refer to the cases of Buckner v. Stubblefield, 1 Washington, 296, and of Hoomes v. Smock, Ibid. 390, decided by the Court of Appeals upon the Virginia statute, a law more restrictive in its terms than is the Alabama statute, as the former speaks only of just discounts against the obligee, being silent as to payment and set-off, (see 3 Stat. at Large, 379 ; 4 ib. 275 ; 6 ib. 87 ; 12 ib. 358, and Acts of 1795, and of January, 1820,) and both the cases thus referred to are instances of entire want of consideration, the writings assigned having been void *ab initio.*

It seems proper in this place to advert to an opinion of the Supreme Court of Virginia, in one of the earlier cases before them under the statute, with respect to any change which that statute might have been supposed to produce in the relative situations of parties to contracts made assignable thereby.    In the case of Norton v. Rose, in 1796, reported in 2 Washington, the law (on page 248) is thus expounded by Roane, Justice, with the concurrence of the whole court : — " It was not intended to abridge the rights of the obligor, or to enlarge those of the assignee beyond that of suing in his own name ; and since it is clear that, prior to this law, an original equity attached to the bond followed it into the hands of the assignee, this law does not expressly, nor by implication, destroy that principle." The same doctrine was ruled in Pennsylvania, as early as the year 1776, in the case of Wheeler v. Hughes, reported in 1 Dallas, 27.    In Pennsylvania, bonds, bills, and promissory notes were by act of Assembly made assignable, as promissory notes in England under the 3d and 4th of Anne, but as the statute of Pennsylvania omitted to declare that those writings " should be placed upon the footing of bills of exchange," it was therefore decided that the assignee of such writing stood in the same place as his obligee or payee, so as to let in every defalcation which the obligor had against him before notice of the assignment, and that the only intent of the act of Assembly was to enable the assignee to sue in his own name, and to prevent the obligee from releasing after notice of assignment.    This doctrine has been frequently reaffirmed in the same State, as will be seen in 2 Dall. 45 ; 6 Serg. & Rawle, 175, and 16 ib. 20.

Turning next to a class of cases founded on what has been denominated the partial failure of consideration, although involving bad faith, breach of warranty, false and deceitful warranties, false representations in the procuring of contracts, such as might in particular aspects extend to the entire rescission of contracts, it will be seen that the Supreme Court of Alabama have, in the construction of their statute, ruled that a defence founded on either or on all of the facts here enumerated shall be admissible in diminution of damages.    And in allowing this mode of defence, which seems to fall more strictly within the import of the terms set-offs and discounts than objections aimed at the total abrogation of contracts can do, the courts of Alabama have acted in accordance with those of other States in construing statutes similar to their own, consistently, too, with the principles of reason and justice adopted by modern tribunals when acting apart from statutory provisions.    The case of Moorehead v. Gayle, reported in 2 Stewart & Porter, 224, was

an action by the assignee against the maker of a promissory note, given for the price of a slave warranted sound. The defence set up was the unsoundness of the slave at the time of the contract, as evinced by his early death and by other circumstances. The court in this case say, that, if it had been necessary to offer to return the slave to permit this defence, yet by the early and sudden death of the slave the vendee would, under the circumstances, have been excused from making the offer; and in considering the right of the vendee to avail himself of the defence, either of a total or partial failure of consideration, the court are led to compare the principle enunciated in the case of Thornton *v.* Wynn, in 12 Wheaton, 183, with the doctrine as laid down in the State of Alabama under her laws, and with respect to the rule of Thornton *v.* Wynn remark as follows : — "It was the most rigid that has anywhere prevailed against relief by way of defence to the action at law. It was doubtless adopted as a part of the system which has been exploded in this State and in many States of the Union, as well as in several of the English courts, that a partial failure of consideration is not a defence to an action at law, brought to recover the price of the article sold, but that in such cases the vendee must resort to his cross action, which remedy, on account of its dilatory nature and circuitous form, is by this court and many others of high authority deemed inconsistent with justice, and the more correct rules of modern practice."

The earlier case of Peden *v.* Moore, reported in 1 Stewart & Porter, 71, furnishes a still more full exposition, by the Supreme Court of Alabama, of the rules of decision deducible from the law of that State. The action in Peden *v.* Moore was brought to recover the amount of a promissory note. The defence pleaded was failure of consideration, payment, and set-off; — whether total or partial failure of consideration does not appear in the form of the pleading, and it would seem that, so far as the form of pleading was involved, the fact of the failure being total or partial was deemed immaterial by the courts, and was a question of proof, inasmuch as the court below regarded as allowable, and even as indispensable, proof of total failure, whilst the Supreme Court decided that proof of partial failure was admissible, and that the exclusion of such proof in that case was error in the inferior court. The defendant below moved the court to instruct the jury, that, if they believed the consideration had failed, except to the amount which had been paid, they should find a verdict for the defendant. This the court refused, but instructed the jury, that, unless a total failure of consideration was proved, they should find a verdict for

the plaintiff. In reviewing the opinion of the court below, the Supreme Court of Alabama say, — "It is our policy to avoid circuity of action, that litigation may be stopped in the germ, before it is permitted to put forth its branches. This idea is most strikingly illustrated by our statutes providing for arbitration and set-off, as well as by the decisions of our courts. Now, to permit a defendant to allege in diminution of a sum sought to be recovered by breach of his contract, that the consideration which induced the contract on his part has partially failed, would have the effect of making one action subserve the purpose of two, and upon the score of convenience it must be unimportant to the plaintiff whether his recovery is diminished, or whether, after having recovered the entire sum, he is compelled to refund a portion of it ; or, if important, the importance would consist in ending litigation, and avoiding the costs of the defendant's action. And surely it would be more compatible with justice, to permit a party to retain that which *ex equo et bono* cannot be demanded of him, and which by law he may recover back ; and more especially, when none of the great principles of right or the landmarks of property would be disturbed. Perhaps it may be said, that the inquiry is too complex for the determination of an ordinary jury. Not so. There would be no more difficulty in ascertaining the sum to be deducted from the defendant's indebtedness, than in admeasuring the quantum of the damages sustained in an action for a false warranty, or for a deceit. In either case, the jury will naturally inquire the sum which was agreed to be paid, and to what extent the consideration is deficient ; so that the obstacles to the achievement of justice will not be greater in the one instance than in the other. We are entirely aware of the decisions which inhibit the defence even of a total failure where there is a warranty on which the defendant may have his remedy. These decisions doubtless proceed upon the principle, that the warranty is a subsisting contract, and the damages sustained by its breach unliquidated. We consider them, however, so far shaken, if not overruled, as to leave the question open for examination. Upon authority, both in point of respectability and numbers, it is clearly provable that, where fraud enters into the transaction, it is competent for the defendant, upon proof of it, to show a defect in the consideration in diminution of damages. This qualified admission of the defence originated from the rule, that fraud avoids the contract *ab initio*. In point of justice, we can discover no sufficient reason for permitting the defence to be set up where there is a fraud in the transaction, and in denying it when there is a false warranty unaccompa-

nied by fraud.  In either case, it is the duty of the jury to graduate the plaintiff's recovery by the injury which the defendant has sustained; for the old common-law notion, that fraud so vitiated every contract which partook of it as not to allow of a recovery, though it but partially impaired the benefit which the defendant expected to derive, has been exploded; more recent authority only allowing it to go in reduction of damages.  The cases of Poulton *v.* Lattimore, 9 Barn. & Cress. 259, of Germaine *v.* Burton, 4 Starkie, 32, and Miller *v.* Smith, 1 Mason, 437, are cases in which the defendant had the plaintiff's warranty, yet this circumstance is not considered by the courts which decided them as interposing an obstacle to the defence!"  The court, in conclusion, with respect to this defence, remark, — "Believing, therefore, that the greater benefit would result from its toleration, we are of opinion, that wherever a defendant can maintain a cross action for damages on account of a defect in personal property purchased by him, or of a noncompliance by the plaintiff with his part of the contract, he may, in defence to an action upon his note made in consequence of such purchase or contract, claim a deduction corresponding with the injury he has sustained."

These copious extracts from the opinions of the Supreme Court of Alabama are thought to be warranted, not only on account of the intrinsic force of the reasoning they contain, but still more so, perhaps, from the fact that they present the best and most authoritative interpretation of the statutes they are meant to expound, as well as of the policy in which those statutes have had their origin. · But beyond the influence and effect of these decisions as expositions of local law, they may be regarded as coincident with the doctrines promulged by the highest tribunals of a portion at least of the States of the Union, and as not conflicting, in principle at least, with some of the later opinions of the English bench.  By the earlier English decisions the following principles appear to have been inflexibly ruled, viz. : — That whenever a contract was tainted by fraud, it never could, if this were shown, be made the foundation of a recovery to any extent, but must be set aside *in toto*.  That in all instances wherein a party was injured either by a partial failure of consideration for the contract, or by the non-fulfilment of the contract, or of a warranty, the person so injured could not defend himself, in an action on the contract, by proving these facts, but could find redress only in a cross action against the plaintiff.  These rules of the common-law courts appear to have yielded materially to the influence of common sense and common convenience.  An example of this may be

perceived in the permission given in cases where a recovery is sought upon the principle of *quantum meruit,* to set up as a defence that the plaintiff has unfairly, or injuriously, or imperfectly fulfilled his obligations towards the defendant, and that he should in such cases recover so far only as he could prove a meritorious performance ; admitting, in these instances at least, the defence founded on discount or on a partial failure of consideration, or a dishonest performance.   See the cases of Basten *v.* Butter, 7 East, 479 ; of Farnsworth *v.* Garrard, 1 Camp. 38 ; of Dehew *v.* Daverell, 3 Camp. 451 ; of Poulton *v.* Lattimore, 9 Barn. & Cress. 259.   In the case of King *v.* Boston, 7 East, 481, on a note, the plaintiff had sold a horse to the defendant, warranted sound, for twelve guineas, of which the defendant had paid three.   In fact, the horse was not sound, and, the defendant refusing to pay more, this action was brought for the value of the horse to recover the difference.   It was proved that the horse at the time of the sale was not worth more than £1 11*s.* 6*d.,* and that the defendant had sold him for £1 10*s.* Lord Kenyon held that the plaintiff could only recover the value, and more having been paid him by the defendant, he nonsuited the plaintiff.   Caswell *v.* Coare, 1 Taunton, 566, was an action upon a warranty of a horse.   It was ruled in this case, that, if the horse is not returned, the measure of damage is the difference between his true value and the price given, which may be shown.   Indeed, the ground on which the English judges have restricted this species of defence to cases of *quantum meruit* implies the admission, that there is nothing in the character of the defence itself, with respect to express undertakings, that is inconsistent with justice or with the true obligations and duties of the contracting parties.   The objection is this, — that if in suits on contracts for specific undertakings, and for stipulated compensation, the defendant could, under the general issue, be let in to show either failure of consideration or non-performance, the plea not disclosing either ground, would effect a surprise upon the plaintiff ; but that where, as on a *quantum meruit,* the plaintiff was to show a meritorious cause of recovery, he must come prepared to encounter any and all objections in conflict with the position he assumes and must maintain.   With all the respect due to the learned men by whom this distinction is made, it may be permitted to doubt whether it is not perhaps more apparent and technical than real ; for it may be asked, whether, in cases of contracts for specific performances and for stipulated equivalents, the plaintiff is not equally bound to prove an honest performance, — such a one as comes up to the equivalent promised by the defend-

ant? Indeed, it would seem, so far as danger of surprise is to be apprehended, that where the rights and duties of parties were set forth in the contract, and in the pleadings founded upon the contract, there would be less danger of surprise than there possibly could be in instances where the forms of proceeding indicated neither, but where every thing was left open to contest at the trial.

The remarks of some of the English judges appear to be peculiarly applicable to this view of the subject. Lawrence, J., in Basten *v.* Butter, 7 East, 484, speaking of the distinction attempted between a *quantum meruit* and other forms of action, says, — "The rule laid down by Mr. Justice Buller may be a good one, if the plaintiff has had no notice of the kind of defence intended to be set up against his demand. But even there, if the plaintiff have previous notice that the defendant means to dispute the goodness or value of the work done, I think the defendant ought to be let in to his defence. For, after all, considering the matter fairly, if the work stipulated for at a certain price were not properly executed, the plaintiff would not have done that which he would have engaged to do; the doing of which would be the consideration for the defendant's promise to pay, and the foundation on which his claim to the price stipulated for would rest; and therefore, especially if he should have notice that the defendant resists payment on that ground, he ought to come prepared with proof that the work was properly done." And Le Blanc, Justice, remarked, — "I think that in either case the plaintiff must be prepared to show that his work was properly done, if that be disputed, in order to prove that he is entitled to his reward; otherwise, he has not performed that which he undertook to do, and the consideration fails: And I think it is competent to the defendant to enter into such a defence, as well where the agreement is to do the work for such a sum, as where it is general to do such work. If a man contracted with another to build him a house for a certain sum, it surely would not be sufficient for the plaintiff to show that he had put together such a quantity of brick and timber in the shape of a house, if it could be shown that it fell down the next day; but that he had done the stipulated work according to his contract. And it is open to the defendant to prove that it was executed in such a manner as to be of no value at all to him, or not to be of the value claimed."

It would seem, then, to be fairly deducible from the reasoning of the English judges, from the case of Basten *v.* Butter, in 7 East, decided in 1806, to that of Poulton *v.* Lattimore, 9 Barn. & Cress., ruled in 1829, that this defence would by those

judges themselves be deemed permissible, whenever it could be alleged without danger of surprise, and consistently with safety to the real rights of the parties; and it appears to be a deduction equally regular, that, where notice of the defence was given, either by pleading or by any other effectual proceeding, neither surprise nor any other invasion of the rights of the parties could occur, or be reasonably apprehended. But however the rule laid down by the courts in England should be understood, it has repeatedly been decided by learned and able judges in our own country, when acting, too, not in virtue of a statutory license or provision, but upon the principles of justice and convenience, and with the view of preventing litigation and expense, that where fraud has occurred in obtaining or in the performance of contracts, or where there has been a failure of consideration, total or partial, or a breach of warranty, fraudulent or otherwise, all or any of these facts may be relied on in defence by a party, when sued upon such contracts; and that he shall not be driven to assert them either for protection, or as a ground for compensation in a cross action. Thus, in the case of Runyan v. Nichols, 11 Johns. 547, the Supreme Court of New York decide, that, in an action upon an attorney's bill, the defendant might give evidence of neglect of duty on the part of the plaintiff, if this defence was set up by plea, or after a notice to the same effect given to the plaintiff before the trial. In Beecker v. Vrooman, 13 Johns. 302, it was decided by the same court, that, in an action for the price of a chattel, the defendant may prove a deceit in the sale, and that the chattel was of no value, and thus defeat the plaintiff's action; or, if the defect produce merely a partial diminution of the value, he may show that in mitigation of damages. In the case of Sill v. Rood, 15 Johns. 230, which was an action on a promissory note given for the price of a chattel, the defendant was allowed, under the general issue, to show deceit in the sale. And it was holden further, that a promissory note given for the price of a chattel represented to be valuable, when in truth it was of no value, is without consideration and void. In the case of Grant v. Button, 14 Johns. 377, the suit was for the price of work and labor, and it was ruled that the defendant, in order to reduce the amount of the plaintiff's claim, might show that the work was not done faithfully and in a workmanlike manner. This, too, was the case of a contract for an agreed price. In Spalding v. Vandercook, 2 Wendell, 432, Chief Justice Savage, in delivering the opinion of the court says, — " In Beecker v. Vrooman, 13 Johns. 302, it is settled that deceit in a sale of a chattel may be shown in bar or in mitigation. The doctrine

Withers *v.* Greene.

of the cases just cited, deduced from principles of justice and from the beneficial purpose of preventing circuity of action, would seem to apply with decisive influence to subjects falling within the range of a polity, by which those doctrines were peculiarly and authoritatively commended. We cannot doubt, therefore, after a full examination of the questions on this record, that, under the provisions of the statute of Alabama pleaded in this case, the plaintiff in error had the right to rely in his defence, either upon a fraud practised on him in the formation of his contract, or on a false or fraudulent warranty, or on a total or partial failure of the consideration on which the contract was entered into by him, or on any payments, discounts, or set-offs, in the language of the statute, " made, had, or possessed by him," provided that the three last grounds of defence shall have come into existence, and been justly belonging to the plaintiff in error, before he had notice of the assignment of his obligation.

A doubt has been suggested as to the power of the plaintiff in error to defend himself, by reason either of fraud or of failure of consideration, — a doubt arising, not from any want of verity of the facts in either of those averments, but from the form of the pleadings in the cause. Thus it is said, that, if he designed to avoid the contract for fraud, he should have averred his disclaimer immediately on a discovery of the fraud, and his proffer to restore the property to the defendant in error, which it is thought the plea has not done. Secondly, it has been supposed that, if a diminution of the price alone was intended, the plea should not have concluded with averring that the writing was procured by false and fraudulent representations, and was therefore void; or with a general prayer for judgment whether the defendant below should be charged, &c. With respect to pleas in bar, it may be premised, that they are never construed with the severity which is applied in testing pleas that are merely dilatory. If, by rational intendment, they meet the cause of action, or, in the quaint phrase of the old writers, they are certain to a general intent, they are deemed sufficient. If their structure merely, and not their substance, is to be assailed, this must be done by a special demurrer; a proceeding by no means favored, as it has rarely any real relation to the merits of the controversy. The averments in this plea with respect to the readiness to return the property are these : — First, that the defendant below resided at a greater distance than three hundred miles from the plaintiff, and in a different State. Secondly, that, from the time at which the defendant below discovered the unsoundness of the fillies, and the falsehood of

their pedigree, he was ready and willing, and desirous, to return them, and would have returned them to the plaintiff, if he had had an opportunity of so doing, which he had not. The law requires of no man that which is unreasonable or impracticable. *Lex neminem cogit ad vana seu impossibilia.* In this case, the defendant below avers his want of power to rid himself of that which he also avers had been fraudulently imposed upon him, and the plaintiff by his demurrer admits the fact, and the character of the fact, as set out in the plea. But it has been said, that the defendant below might have tendered a return of the property · by · notice through the post-office, and was therefore bound to do so. It may be inquired, whether this position does not involve a *petitio principii.* Does not the averment of absolute destitution of the power to return the property imply the absence of all the means leading to that measure, and carry with it the necessary inference of ignorance of the locality of the plaintiff, or of his post-office ? A letter directed to the State of Tennessee, generally, or to some place more than three hundred miles from the defendant below, and in a different State, might, and probably would, have been as unavailable for any practical purpose as a letter addressed to the State of New Hampshire. The plaintiff in error has averred his inability to return the property, and the defendant in error admits the truth of the averment. But the objection to this issue in law is properly applicable only to that aspect of the case which places the rights of the plaintiff below exclusively on the ground of a total rescission of the contract. If the purchaser chose to retain the property, and either to sue upon the warranty of pedigree and soundness, or to defend himself upon the ground of difference between the true and the pretended value of the property, he was bound neither to give immediate notice, nor to tender a return of the property ; he would be permitted to discount the difference between the real and the simulated value. But here the difficulty already mentioned is suggested, namely, that this defence is inconsistent with the conclusion of the plea, which says, " and said defendant saith, that the said sealed note or writing obligatory was obtained from him by the said Newsom, by false and fraudulent representations as aforesaid, and is therefore fraudulent and void in law; wherefore said defendant prays judgment whether he ought to be charged with said debt," &c. This conclusion is said to call for an entire rescission of the contract, as founded in fraud, and cannot be reconciled with the facts previously stated as constituting a · cause for partial relief.

We have already said, that pleas in bar are to receive, if not

Withers v. Greene.

a liberal, certainly not a narrow and merely technical construction; and we will further observe, that, if the difficulty suggested be sound, there never could be a defence in mitigation of damages, where there should be alleged fraud in the inception of the contract, or where there should be a false or deceitful warranty, however willing the defendant might be to accept the difference between the real and the pretended value, and however circumstances might place it beyond his power to return the property. The injured party would in all cases be driven to repudiate the whole contract, or to go without compensation. This course, however, we have seen, is in contravention of the current of decisions which admit of the defence in mitigation of damages. But pleas in bar are always construed according to their entire subject-matter, and will be sustained accordingly, as taken altogether, and will not be determined by a disjoining of their members, or by laying stress on what may be immaterial. It seems, moreover, that the prayer for judgment, or conclusion of such pleas, is not considered as essential to their validity. Thus it is stated by Chitty, Vol. I. p. 558, speaking of pleas in bar, "that this prayer, before the recent rule," (alluding to the rules of pleading adopted in England in the 4th of William IV.,) "ought properly to have corresponded with, and been founded upon, the commencement of the plea, and the effect of the matter contained in the body of it"; but, continues this author, "as the court would *ex officio* give judgment in favor of the defendant according to the substance of the plea, without reference to the conclusion, an error with regard to the prayer of judgment in the concluding part of the plea was not material, except in the case of a plea in abatement." In the case of The King v. Shakespeare, 10 East, 87, upon a demurrer to a plea in abatement, Lord Ellenborough said, — "Praying judgment of the indictment means no more than praying judgment *on* the indictment: and if this were the case of a plea in bar, the court would give that judgment which, upon the whole record, appeared to be the proper judgment, though not prayed for by the party. But in abatement the court will give no other than the proper judgment prayed for by the party, and without the defendant prays a particular and proper judgment in abatement, the court are not bound to give the proper judgment upon the whole record, as they would be in the case of pleas in bar." In Attwood v. Davis, 1 Barn. & Ald. 173, it is said by Bayley, Justice, that "there is a distinction between a plea in bar and a plea in abatement; in the former, the party may have a right judgment upon a wrong prayer, but not in the latter." In the case of Rowles *v.* Lusty,

4 Bingham, 428, upon a writ of entry, it was ruled, that the prayer for judgment for the messuages and land in the count did not vitiate the plea, notwithstanding the commencement of the plea applied only to the messuages and parcel of the land. And in this last case, The King *v.* Shakespeare and Attwood *v.* Davis are cited as authority.

But again, (and this appears to give a conclusive answer to any objection to the admission here of proofs in diminution of damages,) if we must treat this case according to the strictest rules of pleading, it might be said that the plea averring the note to have been obtained by fraud, which is admitted by the demurrer, would be sufficient to entitle the defendant below to a judgment on a declaration counting merely on the note, without regard to the question of total or partial rescission of the original contract. And then, if the plaintiff could be entitled to recover at all, it must be on a count on the original contract, or on a *quantum valebat* for the thing sold. And this would open the entire range of inquiry as to the character of the contract, and as to what in truth constituted the *quantum valebat* on which, if on any thing, the plaintiff could found himself.

Upon this branch of the case, we think the matter averred in the special plea of the defendant below was legitimately pleaded under the statute, and with sufficient certainty and pertinence to authorize a defence on the grounds of a false and deceitful warranty, or of a partial failure of consideration, and that he should have been let in to sustain, if he could, such a defence before the jury. We therefore consider the judgment of the District Court to be erroneous, and do adjudge that the same be reversed, and that this cause be remanded to that court, with instructions to cause an issue to be made up on the special plea filed by the defendant below, under the statute of Alabama, and a *venire facias* to be awarded to try that issue.

Mr. Justice NELSON dissented. (See Appendix.)

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Alabama, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, with instructions to cause an issue to be

made upon the special plea filed by the defendant below, under the statute of Alabama, and to award a *venire facias de novo* to try that issue.