### ZIMPELMAN v. HIPWELL.

(Circuit Court of Appeals, Fifth Circuit.   January 9, 1893.)

#### No. 65.

1. PAROL EVIDENCE TO VARY WRITTEN CONTRACT.
   The purchaser of a mine received a deed purporting to convey a three-fourths interest therein, for which he paid partly in cash, and gave his note for the balance, knowing that the grantor at the time owned only a half interest. The grantor represented that he had an option of another fourth, and orally promised to purchase and convey it to the grantee. *Held*, that the grantee, in a suit on the note, could not introduce parol evidence to prove the oral promise.

2. EVIDENCE—PROOF OF FOREIGN JUDICIAL PROCEEDINGS.
   Legal eviction from a mine in Mexico can be proved in a United States court only by a certified copy of the record in the Mexican court, and not by parol evidence of the agent of the defendant in the eviction proceedings.

3. NEGOTIABLE INSTRUMENTS—FAILURE OF CONSIDERATION—EVIDENCE.
   Where a promissory note is given for the balance due for the purchase of a mine, and in a suit thereon defendant fails to sustain, by proper evidence, his allegations that the title has failed in whole or in part, or that he has been, or is liable to be, evicted by a superior outstanding title, of which he had no notice at the time of purchase, the court should direct a verdict for plaintiff.

4. APPEAL—APPEALABLE ORDERS—REFUSAL TO GRANT NEW TRIAL.
   A refusal of a federal court to grant a new trial is not reviewable on writ of error.

In Error to the Circuit Court of the United States for the Western District of Texas.   Affirmed.

The statement of the case in the brief of plaintiff was adopted by defendant in error, and sanctioned by the court.   It is as follows:

This is an action at law on a promissory note, brought in the United States circuit court for the western district of Texas on the 26th of March, 1890, by the defendant in error, R. J. Hipwell, against the plaintiff in error, George B. Zimpelman.

On April 7, 1892, the plaintiff below filed his "first amended original petition," alleging:

"That heretofore, to wit, on the 6th day of April, 1890, said defendant made, executed, and delivered to plaintiff, for a valuable consideration, his certain promissory note, in words and figures substantially as follows:

"'San Diego, California, April 16, 1890.

"'On or before thirty days after date, without grace, for value received, I promise to pay to the order of R. J. Hipwell the sum of three thousand and three hundred dollars, without interest.

[Signed]                                           "'Geo. B. Zimpelman.'

"Whereby he, the said George B. Zimpelman, became liable and promised to pay plaintiff the sum of three thousand and three hundred dollars, thirty days from said 6th day of April, 1890, together with legal interest on said sum from the maturity of said note. That plaintiff is the legal owner and holder of said note, and, though the same is long since due, defendant has wholly failed to pay the same, or any part thereof, excepting the sum of fifty dollars on the 4th day of October, 1890, indorsed as a credit on said note, and the balance of said note remains unpaid. Plaintiff has often requested payment of same, and plaintiff says he has been damaged in the sum of five thousand dollars. Whereof plaintiff prays (the defendant having heretofore been cited, and now being in court) that he have judgment for the amount still due upon said note, and interest and costs of suit."

On April 7, 1892, defendant below filed his "third amended original answer," pleading:

First. A general denial.

Second. A plea of failure of consideration, as follows: "And for further plea and answer in this behalf, the said defendant, George B. Zimpelman, comes and says that heretofore, to wit, on or about March 19, 1890, said plaintiff sold to defendant three-fourths interest in a certain gold mining claim named 'El Senor,' situated in the territory of Lower California, republic of Mexico, in the mining district of Santa Clara, for the sum of $7,300, for which defendant paid plaintiff $4,000 in cash, and executed a promissory note, sued on and set out in plaintiff's petition, for the sum of $3,300, the balance of the purchase money thereof; that, at the time of said sale, said plaintiff represented to this defendant that he (plaintiff) owned a one-half interest in said mine, and that he had an option to purchase from W. R. Moler, his one-fourth interest in said mine; and that he (plaintiff) then and there promised said defendant that he (plaintiff) would pay for Moler's one-fourth interest in said mine, and procure him to convey the same to said defendant, so as to make defendant a perfect title to said three-fourths interest in said mine.

"Defendant further says that in his plea of failure of consideration, heretofore filed in this cause, said defendant, through inadvertence and by mistake, alleged that plaintiff owned a one-half interest in said mine, whereas, in truth and in fact, he intended to allege, and now does allege, the fact to be, the said plaintiff, at the time of said sale, represented and claimed to own one-half interest in said mine, and represented to defendant that he also had an option to purchase from Moler his one-fourth interest in said mine.

"Defendant further says that relying, in full confidence, upon the representation of said plaintiff as aforesaid, that he did in fact own and have title to one-half interest in said mine, and that he would procure and pay for Moler's one-fourth interest in said mine, so as to make defendant a perfect title to said three-fourths interest in said mine, this defendant was induced to purchase, and did purchase, the three-fourths interest in said mine, and in consideration thereof said defendant paid the money aforesaid, and executed said promissory note to said plaintiff. The plaintiff has refused to secure the said one-fourth interest of said Moler, and has failed and refused to make to defendant any title whatever to said mine, except on the 19th of March, A. D. 1890, the said plaintiff executed to said defendant a certain deed conveying three-fourths interest in said mine, and reciting therein the consideration of $1,000, whereas the true consideration of said deed was the sum of $7,300, $4,000 of which was paid in cash, and the said note was made and executed for the balance; that said deed was duly acknowledged by the said plaintiff on the 10th day of April, 1890, and, by mutual agreement of plaintiff and defendant, placed in escrow, to be delivered when the plaintiff perfected his title to the said three-fourths interest in said property; that said plaintiff never perfected his title to said three-fourths interest in said mine, and the said deed was never delivered to said defendant, but, as defendant is informed and believes, was delivered back to plaintiff or his attorneys. And defendant further says that after being put into possession of said mine, and expending about the sum of $5,000 in the development thereof, over and above all the returns therefrom, which was wholly lost to defendant, that the said Moler, in whose name the said mine was denounced, and who had the legal title to

the entire mine, and the right of property, was put into possession of said mine by the mining judge of the district, and this defendant evicted therefrom, and that the said Moler continued to hold possession of said mine, and work the same, in such a manner as to damage the same in the sum of $5,000.

"And defendant further says that the said plaintiff did not have the title to any interest in said mine, in his own name, at the date of said purchase, but the same was in the name of W. R. Moler, who claimed the same in his own right, and refused to recognize any interest in this defendant under the purchase aforesaid from the said plaintiff, and that said plaintiff has hitherto failed and refused, and still refuses and fails, to make defendant any title whatever to said mine, except the deed placed in escrow, as aforesaid, which was never delivered to defendant, or accepted by him.

"Wherefore, defendant says that in consequence and by reason of said failure of said plaintiff to make this defendant a title to said mine as he promised and undertook to do, the consideration for which said note was given and money paid, as aforesaid, has wholly failed, and this he is ready to verify. Wherefore, he prays judgment."

On April 7, 1892, plaintiff filed his "first supplemental petition," denying the allegation in defendant's special answer, and alleging "that if any agreement was ever made by plaintiff with defendant respecting the mine, or any interest therein described, besides the deed described in said answer and the note sued upon, then said agreement was an oral agreement, and not in writing, and he here pleads specially the statute of frauds, requiring all contracts respecting real estate, or any interest therein, to be in writing."

On the 7th day of April, 1892, said cause came on for trial before a jury, and during the progress of the trial (the plaintiff having introduced in evidence the note and deed) the defendant, George B. Zimpelman, testified in his own behalf as follows:

That he executed the note sued on as a part of the consideration of the purchase of a mining claim called "El Senor," situated in the territory of Lower California, republic of Mexico, in the mining district of Santa Clara, from the plaintiff, R. J. Hipwell. That he bought from said plaintiff three-fourths interest in said mining claim, and paid $4,000 in cash, and executed the note for $3,300, sued on, for the balance; the true consideration being $7,300, and not $1,000, as stated in the deed, (that sum being named in the deed, by agreement, for the purpose of reducing the stamps, under the Mexican regulations.) That the deed was delivered to him and left in escrow with the attorneys of both parties in San Diego. That the deed was held in escrow, and is in escrow now. It was left with the attorneys at San Diego. "I have tried to get it, and have written to Col. Welborn, the person it was left with, and he wrote that he did not have it." That he (witness) took possession of the mine about the 20th of March, 1890, and kept possession of the same until about the last of June of 1st of July, 1890.

"At the time the deed was executed, the agreement was: Hipwell would make a fresh deed, altogether, for the whole concern,—Moler's portion included; and at the time I was to buy, if I could, or Hipwell was to buy, the one fourth mentioned in that deed from Mr. Wentworth. I bought that. The deed was put in the hands of Col. Welborn by Hipwell. I do not think I was present at the time the deed was deposited with Col. Welborn. It was understood it was to be left there for the purpose of having it, and, when Moler conveyed his one-fourth interest, then Hipwell was to make the deed he promised he would, that is, a deed in full to the three fourths. Hipwell at the time claimed to own one half. The facts were that, as soon as Hipwell could get the title from Moler, he would then—and if he could, or I could—buy the one-fourth interest of Wentworth, then he would make a title which was to be sent down to the City of Mexico, regularly stamped, and the title would pass there, and the balance of the money was to be paid. I have never had the deed, from that day to this. I never accepted the deed that was placed in escrow with Col. Welborn. It was never delivered to me. I saw the deed at the time of its execution. After it was placed in the hands of Col. Welborn, I never saw it. The deed was put in the hands of Col. Welborn with the consent of both parties. I took possession of

the mine before the deed was executed, and before the deed was put in the hands of Col. Welborn, and before the 1st of April, 1890. I left the mine in May of that year, and left my son, George, in possession of the same. At the time of the contract and purchase, Hipwell told me that Moler had one-fourth interest in the mine, and he said that he (Hipwell) had an option to sell it. He conveyed me the three fourths, conveying his one half and Moler's one fourth. He claimed he had a right to sell Moler's part. He said he had an option to sell Moler's part, and he would sell it. I relied upon that representation by Moler, and I would not have made the trade, had I not relied upon it. The $50 credit on the note is money I loaned to Hipwell at the time of the credit. The note was not put in escrow. Hipwell had said frequently to me that he wanted to buy Moler's interest, and wanted to get it at his own price. I have always told Hipwell that, if Moler makes the title, it is settled."

To this testimony the plaintiff objected on the following grounds: "The deed and promissory note being in evidence, and being in writing, shows the contract between the parties respecting the property; and parol testimony is not admissible to contradict the deed, or to show a contemporaneous agreement between the parties respecting the conveyance of the property, or to establish a covenant for further assurance on the part of Hipwell; and parol evidence is inadmissible to establish the agreement set up by the defendant respecting the acquisition and conveyance by Hipwell of the one-fourth interest in the mine, alleged to have been owned by Moler, for the reason, if such a contract was ever made, it should have been in writing, in accordance with the statute of frauds, requiring all contracts respecting the purchase and conveyance of any interest in lands to be in writing."

Plaintiff's objections were sustained by the court, and the evidence excluded from the jury; to which ruling of the court the defendant excepted at the time, and tendered his bill of exceptions, which were duly allowed by the court.

Defendant also, on the 7th day of April, 1890, called George Zimpelman, Jr., as witness for the defendant, who testified as follows: "That the defendant was his father, and about the 1st of April placed him in possession of El Senor mine, and left for Texas. That he continued to hold possession thereof, and work the same, until about the 1st of August, 1890, when W. R. Moler set up claim to said mine, and shortly afterwards Judge Zaeta, the mining judge of Santa Clara district, Lower California, Mexico, summoned himself and Mr. Moler to appear before him, and that on doing so he stated to him that the mine had been denounced in the name of W. R. Moler, and that the title was in him, and he was entitled to the possession, and ordered him (said witness) to leave the mine, and he placed said Moler in possession of the same; that afterwards plaintiff (Hipwell) came to him (witness) while Moler was in town, and told him to take a six-shooter, and go up and take possession by force, but that he would not go up with him, as he feared Moler would kill him (Hipwell) if he did; that he (witness) was never able to get possession of the mine, nor had his father ever regained possession."

To this testimony the plaintiff also objected, on the ground "that the same was not competent to establish a legal eviction from the mine, and for the reason that, if defendant was evicted by virtue of any legal judgment or judicial order, a certified copy of the same, duly authenticated, should be produced, and the record could be proven as the law requires."

This closed the evidence, whereupon the court instructed the jury to return a verdict for the plaintiff for the full amount due upon the note sued on, with legal interest due thereon, to which defendant excepted at the time, and tendered his bill of exceptions, which was duly allowed by the court.

Under the charge of the court the jury returned a verdict for the plaintiff for the full amount due upon the note, with legal interest thereon, amounting to the sum of $3,692.65, for which judgment was rendered.

On April 9, 1892, defendant filed his motion for a new trial, on the following grounds: "First. Because the court erred in excluding the evidence of George B. Zimpelman, defendant, upon the objection of the plaintiff, as shown by bills of exception marked 'Exhibit A,' filed in said cause, and

made a part hereof. Second. Because the court erred in charging the jury to return a verdict for the plaintiff for the amount of the principal of the note sued on, with interest thereon, and thereby withdrawing from the jury all evidence in the case, as shown by bill of exception marked 'Exhibit B,' filed in said cause, and referred to and made a part hereof,"—which motion was overruled by the court.

Joseph Paxton Blair and F. J. Beall, (Davis, Beall & Kemp, on the brief,) for plaintiff in error.

Millard Patterson, (A. G. Wilcox, on the brief,) for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge. The statement of facts found on the first 12 pages of the brief filed by plaintiff in error is expressly approved and adopted by the defendant in error, and therefore may be accepted as a correct statement of the case.

The plaintiff in error relies upon the following assignments of error for a reversal of this case:

(1) That upon the trial of said cause the court erred in excluding from the jury the evidence of George B. Zimpelman, defendant, upon the objections of plaintiff.

(2) The court erred in excluding from the jury the evidence of George Zimpelman, Jr., upon objections by the plaintiff.

(3) The court erred in instructing the jury to return a verdict for the plaintiff, R. J. Hipwell, for the amount of the note sued on.

(4) The court erred in overruling the motion for a new trial made by the defendant, George B. Zimpelman.

1. In support of this assignment, counsel for plaintiff in error claims that it is a well-settled rule at common law that proof may be used to contradict or vary the consideration recited in a deed or written contract; that in this case, the deed and note sued on forming a part of the more comprehensive transaction, the terms of which are not attempted to be expressed in writing, parol testimony as to such parts of the transaction as were not reduced to writing is admissible; that a total failure of consideration will avoid a commercial instrument resting upon it as completely as an original want of consideration; and that the failure to give a good title to land or personal property, which has been sold, is always a good defense, and, if the entire title fails, it will be a total failure; otherwise, only a partial failure. The correctness of these propositions may be safely admitted, but a reference to the bill of exceptions shows that the evidence of George B. Zimpelman, defendant, so far as it is affected by said propositions, was not excluded, but was only excluded in so far as it was offered by defendant to show (a) that Hipwell only owned a one-half interest in the mine at the time of the execution of the deed; and (b) that there was a contemporaneous agreement by which Hipwell was to secure a one-fourth interest in the mine from one Moler for the defendant, and convey the same, or cause the same to be conveyed, to the defendant.

(a) The answer of the defendant pleads a total failure of consideration by reason of an alleged eviction, but admits that, at the time of making the contract of sale of the three-fourths interest in the mine, the said Hipwell "represented and claimed to own one-half interest in said mine, and represented to defendant that he also had an option to purchase from Moler his one-fourth interest in said mine. Defendant further says that relying in full confidence upon the representations of said plaintiff, as aforesaid, that he did in fact own and have title to one-half interest in said mine, and that he would procure and pay for Moler's one-fourth interest in said mine, so as to make defendant a perfect title to said three-fourths interest in said mine, this defendant was induced to purchase, and did purchase, the three-fourths interest in said mine, and in consideration therefor said defendant paid the money aforesaid, and executed said promissory note, to said plaintiff." The answer does not charge any fraud on the part of plaintiff, Hipwell, but seems to base the defense in regard to the one-fourth interest solely upon the failure of Hipwell to acquire the same from Moler. So far as the bill of exceptions shows, no legal proof showing an eviction from the property, in whole or in part, has been offered. The rejected evidence, if admitted, could only have tended to show a partial failure of consideration. In Greenleaf v. Cook, 2 Wheat. 13, relied upon by defendant in error, it was held that, where a promissory note was given for the purchase of property, the failure of consideration through defect of title must be total, in order to constitute a good defense to an action at law on the note; but in Withers v. Green, 9 How. 213, reaffirmed in Van Buren v. Digges, 11 How. 476, it was determined that, in an action on a promissory note between the original parties, (in order to avoid circuity of action, mainly,) a partial failure of consideration may be set up as a defense pro tanto. The rule declared in the supreme court of Texas in regard to failure of consideration in whole or in part, pleaded by a purchaser under an executed contract, is found in Price v. Blount, 41 Tex. 472, as follows:

"Where the purchaser holds under an executed contract, as a deed with warranty, he cannot resist the payment of the purchase money on proof that the title may be doubtful. He must do more. He must show with reasonable certainty that the title has failed, in whole or in part, and that he has been evicted, or, if not, that he is liable to be evicted, by a superior outstanding title, of which he had no notice at the time of his purchase;" citing Cooper v. Singleton, 19 Tex. 266; Woodward v. Rodgers, 20 Tex. 178; Johnson v. Long, 27 Tex. 21; Demaret v. Bennett, 29 Tex. 263.

The contract between Hipwell and Zimpelman was executed. Zimpelman was put in possession of the property, and he admits that at the time of purchase he knew of the outstanding title of Moler to one-fourth of the same, and he produces no legal evidence of any eviction.

(b) The terms of the contract of sale between the parties were reduced to writing, so far as the obligation to pay, the stipulations of Hipwell to sell and convey, and the thing to be sold and conveyed, were concerned; and they duly appear in the note sued on, and in the deed found in the record, which deed reads as follows:

"Know all men by these presents, that I, R. J. Hipwell, of San Diego, California, for and in consideration of the sum of one thousand dollars, ($1,000.00,) lawful money of the United States, in hand paid me, the receipt of which is hereby acknowledged, do by these presents, grant, bargain, sell, and convey unto George B. Zimpelman, his heirs and assigns, all my right, title, and interest in and to the El Senor mine, situated at Almo, L. C., the same being a three-fourths of the whole; and I expressly hereby agree with Geo. B. Zimpelman that, should I purchase the other one-fourth interest in said mine, that I will not demand any portion of the profits of said mine until all debts against same are paid, including the amount paid me for my present three-fourths interest.

[Signed] "R. J. Hipwell. [Seal.]

"Witnesses:
 "W. L. Maury, Jr.
 "W. F. Steagall."

The said promissory note and deed being in evidence, parol testimony was not admissible to contradict or vary the terms of the deed, nor to show a contemporaneous parol agreement between the parties respecting the property to be conveyed, nor to establish a covenant for further assurance on the part of the plaintiff, Hipwell. 1 Greenl. Ev. § 225; Railroad Co. v. Garrett, 52 Tex. 139. And authorities might be multiplied indefinitely. We conclude, therefore, that the ruling complained of in the first assignment of error was correct.

2. The testimony of George Zimpelman, Jr., was objected to by the plaintiff as not competent to establish a legal eviction from the mine, and for the further reason that, if the defendant was evicted by virtue of any legal or judicial order, a certified copy of the same, duly authenticated, should be proved, and the record should be proven, as the law requires. The defendant, in order to maintain his defense, was bound to show a legal eviction, (Westrope v. Chambers, 51 Tex. 188,) and to that end parol evidence is not admissible, (1 Greenl. Ev. §§ 501, 514.) This assignment of error is not well taken.

3. We think the court properly instructed the jury to find a verdict for the plaintiff. From the evidence in the case, the defendant did not show with reasonable certainty, by proper evidence, that the title to the property purchased had failed, either in whole or in part, nor that he had been evicted, or was liable to be evicted, by a superior outstanding title, of which he had no notice at the time of purchase. See Price v. Blount, supra.

4. Motions for a new trial are within the discretion of the trial court, and refusals to grant the same cannot be reviewed upon writ of error.

From a careful review of the whole case, and an examination of all the points and authorities urged by the plaintiff in error, we do not find any error in the proceedings, warranting a reversal of the judgment rendered in the court below; and it is therefore affirmed, with costs.